IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CRISTIAN ARIEL AREVALO ARIAS,<br><br>*Defendant.* | No. 1:21-CR-260<br><br>Hon. Leonie M. Brinkema<br><br>Trial Date: September 11, 2023<br><br>Motions Hearing Date: May 23, 2023 |

### GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTIONS TO STRIKE ALIAS AND SURPLUSAGE FROM THE INDICTMENT

Defendant Cristian Ariel Arevalo Arias ("Arevalo") has moved to strike any and all references to his gang moniker and alias, "Serio," from the Superseding Indictment. ECF 211. Arevalo has also moved to strike from Count One of the Superseding Indictment certain general allegations and descriptions of *La Mara Salvatrucha* ("MS-13"), the alleged racketeering enterprise in this case, which he contends are irrelevant and prejudicial. ECF 212. Defendants Jairo Gustavo Aguilera Sagastizado ("Aguilera") and Marvin Menjivar Gutiérrez ("Menjivar") have moved to adopt these motions to strike. *See* ECF 232, 249. Because the language that the defendants seek to strike is integral and not unduly prejudicial, both of these motions are without merit and should be denied.

### APPLICABLE LEGAL STANDARDS

"Upon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). The purpose of Rule 7(d) is "to protect a defendant against inflammatory or prejudicial allegations that are neither relevant nor material to the charges." *United States v. Moussaoui*, No. 1:1cr455-A, 2003 WL 1877700, at *1 (E.D. Va. Feb. 28, 2003)

1

(citing *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979)).  "[A] motion to strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (quoting *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998)); *see also United States v. Allegheny Bottling Co.*, Crim. No. 87–123–N, 1988 WL 32936, at *3 (E.D. Va. Feb. 10, 1988) ("[I]t is clearly established that the mere presence of surplusage in an indictment, absent prejudice, need not be stricken." (citing *Ford v. United States*, 273 U.S. 593 (1927))).  This is "an exacting standard, and courts are often slow to grant a motion to strike surplusage."  1 Charles Alan Wright, et al., *Federal Practice and Procedure (Criminal)* § 128 (4th ed. 2019).

An alias is not surplusage if the government "intends to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment."  *United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir. 1976); *see also United States v. Hines*, 955 F.2d 1449, 1454 (11th Cir. 1992) ("[T]he use of an alias in an indictment and in evidence is permissible if it is necessary to connect the defendants with the acts charged."); *United States v. Thompson*, No. 3:08CR309, 2008 WL 11374374, at *1 (E.D. Va. Sept. 11, 2008) ("Aliases are admissible when they relate to proof of the acts charged and the defendant's identity." (citation omitted)).

## ARGUMENT

I. **The Defendants' Aliases Are Not Surplusage and Should Remain in the Indictment**

Here, the defendants' gang monikers and aliases have been properly included in the Superseding Indictment and should not be stricken.  The government intends to introduce testimonial and documentary evidence establishing that the defendants used, and were known by,

2

these aliases.[1] The government will further show that, as is common – though not required – among MS-13 cliques, certain defendants' gang monikers changed when they were promoted for committing murders.[2] The discovery materials – including incriminating messages extracted from the defendants' phones and Facebook records that the government will introduce as evidence at trial – are replete with references to these aliases, which the defendants regularly used to identify themselves and each other rather than using real names. For example, a list of the *Sitios Locos Salvatrucha's* members in the United States, their ranks, and where they were residing in early June prior to the murders of M.B.L. and J.G.M. was extracted from Canales' cellular phone.




---

[1] Indeed, prior to their arrests, several of the defendants were largely known to their co-conspirators only by their aliases or alphanumerical abbreviations of those aliases. For example, multiple co-conspirators have identified Menjivar only as "Astuto" or "A1" and Melvin Canales Saldana ("Saldana") as "Demente" or "D1." STLS members and associates also saved one another's phone and WhatsApp numbers in their own phones' contacts under these aliases and alphanumerical abbreviations.

[2] The government's evidence will show that Molina's gang moniker changed from *Rino* to *Tecolote* when he became a *chequeo* after killing E.L.T. and that Aguilera's *taca* changed from *Coy* to *Psicólogo* when he became a *chequeo* after killing A.K.S

3

Following the murders of M.B.L. and J.G.M., Mario Antonio Guevara Rivera ("Guevara") created various iterations of reports in which he said that "b1," "s1," and "o1" had killed two *chavalas*. Guevara sent Menjivar such a report, and Menjivar told Guevara to use the participants' correct *tacas* rather than their alphanumerical abbreviations and to include the fact that they had each risen to the rank of *chequeo*, and Guevara proceeded to send Menjivar a report stating that "blue," "serio," and "oculto" murdered two MS-13 rivals. Guevara has "El Blue" tattooed on his chest, Arevalo repeatedly refers to himself as "El Serio" in Facebook and WhatsApp messages, and Turcios admitted to being known as "Oculto" when interviewed by law enforcement.

Should the government fail to prove that an alias belonged to a particular defendant, or fail to prove the relevance of an alias to the acts charged, the defendants may renew their motion at trial and request an appropriate limiting instruction. *See Clark*, 541 F.2d at 1018; *see also United States v. Johnson*, 585 F. Supp. 80, 81 (M.D. Tenn. 1984) ("[T]he truth of the allegations of an indictment is tested at trial and not by pretrial motion or other preliminary proceeding . . . That an allegation of the indictment may be false does not render it surplusage so as to permit it to be stricken pretrial."). Unless and until that occurs, however, the aliases should remain.

II. **The General Allegations in the Superseding Indictment are not Surplusage, as They are Relevant and Not Prejudicial**

Arevalo's motion to strike the allegations in the introductory paragraphs of Count One of the Superseding Indictment that describe MS-13's scope, purpose, organizational structure, and methods should likewise be denied. Those allegations – which the government will prove through expert and lay witness testimony – can hardly be deemed superfluous. To the contrary, they directly address elements of the charged offenses that the government must establish at trial and are therefore essential. For example, before the defendants can be convicted of the counts that charge them with murder in aid of racketeering, the government must prove the existence of an

4

"enterprise," as defined in 18 U.S.C. § 1959(b)(2), that affects interstate or foreign commerce and engages in "racketeering activity," as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1). *See United States v. Gray*, 137 F.3d 765, 772 (4th Cir. 1998). The term "enterprise" includes a "group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To prove the existence of such an enterprise, the government may prove that the individuals in the group "associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (holding that the term "enterprise," for purposes of § 1959(b), encompasses both legitimate and illegitimate organizations); *see also United States v. Griffin*, 660 F.2d 996, 1000 (4th Cir. 1981) (stating that hallmarks of RICO enterprise are "continuity, unity, shared purpose and identifiable structure"). The existence of the enterprise is further established by the group's strong social ties. *See United States v. Richardson*, 167 F.3d 621, 625 (D.C. Cir. 1999).

    Beyond proving that there was an enterprise, the government must also demonstrate that the defendants had positions in the enterprise. *See United States v. Fiel*, 35 F.3d 997, 1003–04 (4th Cir. 1994). A defendant has a position in the enterprise if he knowingly and willfully associates himself with the enterprise—that is, he must be connected to the enterprise in some meaningful way and have knowledge of the existence of the enterprise through a general awareness of some of its purposes, activities, and personnel. *See, e.g.*, *United States v. Fernandez*, 388 F.3d 1199, 1231 (9th Cir. 2004); *United States v. Brady*, 26 F.3d 282, 289–90 (2d Cir. 1994).

    The general allegations in Count One of the Superseding Indictment are all relevant to the elements of the charged racketeering offenses. Specifically, the allegations in paragraphs 1 through 10 and 12 through 19 pertain to the following:

- the organization of MS13, the alleged criminal enterprise, *see* ECF 27 at ¶¶ 9, 10, 12, 13, and 15

5

- the enterprise's rules, customs, and objectives, *see id*. ¶¶ 4-9, 14, 15, 17, 19, and 20

- the enterprise's effects on interstate and foreign commerce, *see id*. ¶¶ 1, 3, 13, 16, and 20

- the enterprise's racketeering activities, *see id*. ¶¶ 8, 16, 19, 20

As such, these allegations reflect the unity, shared purpose, and identifiable structure of the enterprise, *see Griffin*, 660 F.2d at 1000; the manner in which the enterprise's activities affect interstate and foreign commerce, *see Gray*, 137 F.3d at 772; and the criminal acts that constitute a pattern of racketeering activity, *see Turkette*, 452 U.S. at 583.  The Superseding Indictment also includes allegations that the defendants were members and associates of a particular MS-13 clique, *see* ECF 27 at ¶¶ 10 and 11, the relevance of which is self-evident.

Because these allegations are relevant and material, they do not constitute surplusage and should not be stricken.  *See, e.g.*, *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) ("In RICO cases, courts have refused to strike allegations of organized crime connections that serve to identify the enterprise and the means by which its members and associates conduct various criminal activities." (internal quotation marks omitted)); *United States v. Sattar*, 314 F. Supp. 2d 279, 320 (S.D.N.Y. 2004) ("[B]ackground paragraphs need not be stricken from an indictment where they are relevant to the crimes charged." (citation omitted)); *United States v. Watt*, 911 F. Supp. 538, 554 (D.D.C. 1995) (rejecting motion to strike indictment's introduction as surplusage because it "provides the background necessary for a jury to understand the full scope of defendant's activities, and to place defendant's conduct in the appropriate context").

Moreover, the general allegations are not unduly prejudicial.  Contrary to Arevalo's unfounded assertion, the allegations that MS-13 is comprised largely by members of Salvadoran origin and predominantly recruits Hispanics are not "included merely to inflame prejudice,"

designed to "direct the jury's attention to the race of the defendants," or "designed to evoke . . . xenophobic prejudice in the jurors." *See* ECF 212 at 5, 8. Instead, these allegations are intended merely to describe the nature of the enterprise and its effect on interstate and foreign commerce. *See United States v. Sims*, No. 3:12cr513-03, 2013 WL 1403212, at *4 (D.S.C. Apr. 5, 2013) ("The court agrees with the government that establishment of the history, structure, and organization of the gang . . . is relevant to the existence of an enterprise affecting interstate commerce, one element the government must prove."). Further, there is nothing inflammatory or prejudicial about the fact that most of MS-13's members and associates are Hispanic. No evidence supports, and Arevalo does not allege, that the defendants have been charged with racketeering offenses because of their race. The Superseding Indictment in no way suggests that all or most individuals of Salvadoran heritage are members or associates of MS-13.

Arevalo attacks other allegations as being contradictory and intended to confuse the jury regarding the presence or absence of indicia of possible gang membership. For example, Arevalo contends that the United States attempts to suggest that a lack of tattoos can be evidence of MS-13 membership or association. Arevalo is mistaken. The government is not alleging that each of the general allegations is necessarily true or untrue as to each particular defendant, but are rather generally true with respect to the MS-13 enterprise. The government would not, and will not, argue that the fact someone lacks tattoos indicates that he belongs to or associates with MS-13. However, the government *may* argue that simply because a defendant does not have "MS-13" tattooed on his head like Canales or a gang moniker tattooed on his chest like Guevara does not mean he *is not* an MS-13 member or associate. Similarly, the government will argue that just because a defendant does not post pictures of himself on social media sporting certain shoes or clothing does not necessarily mean that he is not in MS-13.

7

Arevalo's challenges to specific allegations in the introductory paragraphs also reveal that he fails to understand the manner in which the government may prove that MS-13 is an enterprise engaged in racketeering activity. For example, on the grounds that the defendants have not been charged with robbery or extortion, Arevalo seeks to strike from the indictment any reference to those specific offenses. ECF 313 at 7. But the government may prove at trial that MS-13 is a racketeering enterprise by introducing evidence that MS-13 members and associates *other than the defendants* were engaged in specific racketeering offenses, including any of those alleged in Count One's General Allegations. *See, e.g.*, *Fiel*, 35 F.3d at 1004 (4th Cir. 1994) (in a VICAR prosecution, the government proved drug dealing as the enterprise's racketeering activity and attempted murder as the substantive crime in aid of racketeering activity). Indeed, the government typically proves that MS-13 was an enterprise engaged in racketeering activity around the time of the charged offenses through the testimony of a gang expert as well as evidence of other crimes committed in furtherance of the gang's objectives by former members or associates of MS-13. When the government introduces such evidence, the jury is instructed that the evidence has been introduced for purposes of proving that the alleged enterprise was engaged in racketeering activity, that it should only consider such evidence in determining whether the government has proved that MS-13 engaged in racketeering activity, and that it may not consider such crimes as proof of the crimes charged. *See United States v. Wilmar Javier Viera Gonzalez, et al.* 1:16cr209-LO, DE 391 at 60–63; *United States v. Pedro Anthony Romero Cruz, et al.*, 1:14cr306-GBL, ECF 896 at 9–11. Therefore, evidence that MS-13 gang members other than the defendants committed any of the crimes listed in the General Allegations would be relevant to the issue of whether MS-13 is an enterprise engaged in racketeering activity. As such, those allegations cannot be deemed surplusage.

8

Arevalo also asks the Court to strike from the Superseding Indictment allegations that one of MS-13's purposes is "[k]eeping victims, potential victims, and community members in fear of the enterprise through violence and threats of violence." ECF 212 at 7. But these allegations, which the government will prove at trial, are relevant to proving MS-13's purpose and racketeering activities. *See Turkette*, 452 U.S. at 583; *Griffin*, 660 F.2d at 1000. Allegations that MS-13 employs such vicious tactics and instills such fear, much like the evidence that the government will adduce to substantiate as much, is undoubtedly prejudicial, but by no means unduly so. As a result, these allegations, too, are properly included in the indictment. *Williams*, 445 F.3d at 733.

## CONCLUSION

Wherefore, for the foregoing reasons, Aguilera's Motion to Exclude or Circumscribe Gang Expert Testimony should be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
John C. Blanchard
Maureen C. Cain
Megan C. Braun
Assistant United States Attorneys

Matthew K. Hoff
Department of Justice Trial Attorney
Organized Crime and Gang Section

## CERTIFICATE OF SERVICE

I certify that on May 5, 2023, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy of this document to be transmitted to counsel of record.

By: _____/s/_____
John C. Blanchard
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3999
Fax:   (703) 299-3980
John.Blanchard@usdoj.gov